775 F.2d 1349
 Carolyn R. YOUNG, Individually and As Next Friend of Her
Minor Child, Nikiya A. Young, and As Community
Survivor of David A. Young, Deceased,
Plaintiff-Appellee Cross-Appellant,
v.
The CITY OF KILLEEN, TEXAS, etc., et al., Defendants-Cross Appellees,
and
Kenneth Olson, Defendant-Appellant Cross-Appellee.
 No. 84-1767.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 8, 1985.
 
 Cox & Smith, Terry S. Bickerton, Cynthia J. Estee, San Antonio, Tex., for defendant-appellant cross-appellee.
 Spivey & Griggs, Paul E. Knisely, Dicky Grigg, Austin, Tex., for plaintiff-appellee cross-appellant.
 Appeals from the United States District Court for the Western District of Texas.
 Before REAVLEY and JOLLY, Circuit Judges, and SANDERS,* District Judge.
 OPINION
 REAVLEY, Circuit Judge:
 
 
 1
 A City of Killeen police officer, Kenneth Olson, shot and killed David A. Young on June 7, 1981. The widow, Carolyn R. Young, suing as community survivor, and for her minor daughter and herself, brought this action against Olson, Police Chief Frances L. Giacomozzi and the City of Killeen under 42 U.S.C. Sec. 1983 as well as Texas wrongful death law. After a trial before the court, the district judge awarded the plaintiffs a judgment for $202,295.80 against Officer Olson only. Young appeals the denial of recovery against the police chief and City of Killeen, and Olson appeals from the judgment against him. We hold that no Sec. 1983 recovery is warranted, but we affirm the judgment on the pendent Texas wrongful death claim.
 
 I.
 
 2
 David Young, with a friend, drove to a parking lot in an area of Killeen where they could buy marijuana. Officer Olson observed the apparent drug transaction between the two men in Young's car and a pedestrian. Olson directed his patrol car, with lights flashing, at the participants in the attempt to apprehend them. The pedestrian fled on foot, and Young tried to drive away. Olson successfully blocked Young by pulling his patrol car in front of Young's car. Olson left his car and ordered Young and his passenger to exit theirs. Young apparently reached down to the seat or floorboard of his car and Olson, believing that Young had a gun, fired his own weapon. The shot was fatal.
 
 
 3
 The district judge, relying on the testimony of an expert witness on police procedure, found that Olson acted negligently and contrary to good police procedure in the following respects:
 
 
 4
 (1) failure to use his radio;
 
 
 5
 (2) failure to utilize a back-up unit;
 
 
 6
 (3) dangerous placement of his patrol car in a "cut off" maneuver;
 
 
 7
 (4) ordering the two men to exit their car rather than issuing an immobilization command to remain in the car with their hands in plain view;
 
 
 8
 (5) increasing the risk of an incident by having two suspects getting out of a car;
 
 
 9
 (6) abandoning a covered position and advancing into the open, where the odds of overreacting would be greater.
 
 
 10
 The judge concluded that Olson's fault in this respect not only placed Olson in a position of greater danger but also imperiled Young by creating a situation where a fatal error was likely.
 
 
 11
 The district judge found against the liability of the police chief and the City. He found no evidence of fault on the part of the police chief and no policy or custom of the City related to Olson's fault or the death of Young.
 
 II. THE PLAINTIFFS' APPEAL
 A. City Liability
 
 12
 There is no basis in this record for holding the City liable. Young's loss of life cannot be attributed to a policy of the City of Killeen. See City of Oklahoma City v. Tuttle, --- U.S. ----, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); Bennett v. City of Slidell, 728 F.2d 762 (5th Cir.1984) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). The plaintiff argues that the suit was against the officer in his official capacity, by which it should follow that the City of Killeen must pay the judgment under Brandon v. Holt, 469 U.S. ----, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). By that opinion the Court dealt with the question of whether the city was, or could be held to be, a party defendant; nothing was decided with respect to the liability of the city. See Brandon v. Holt, 469 U.S. at ---- n. 25, 105 S.Ct. at 879 n. 25, 83 L.Ed.2d at 886 n. 25. In order for the plaintiff to prevail in an official-capacity action against the city, the plaintiff must prove the policy or custom of the city and the other elements of municipal liability. See Kentucky v. Graham, --- U.S. ----, ----, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). In the present case the City was a named party and no basis was established for its liability.
 
 
 13
 Nor can we find any merit in the argument that the City is liable under Texas tort law as employer of Olson. That liability would depend upon waiver of governmental immunity by the Texas Tort Claims Act. Tex.Rev.Civ.Stat.Ann. art. 6252-19 (West 1970). That Texas statute, which waives governmental unit immunity where an employee commits a tort in the use of a motor driven vehicle or other tangible property, has an exemption which clearly applies to the present situation. Section 14(8) excludes any claim "arising out of the action of an officer, agent or employee while responding to emergency calls or reacting to emergency situations when such action is in compliance with the laws and ordinances applicable to emergency action." No question is raised by the evidence but that Olson, in the use of whatever tangible property he used, was reacting to an emergency situation and violated no law or ordinance in doing so.
 
 B. The Police Chief's Liability
 
 14
 Nor is there any basis for holding the police chief liable. Personal responsibility of the chief for the constitutional deprivation is an essential element of a civil rights cause of action against him, and there was no personal involvement here. See Rizzo v. Goode, 423 U.S. 362, 371-72, 377, 96 S.Ct. 598, 604-05, 607, 46 L.Ed.2d 561, 569-70, 573 (1976) (affirmative link needed between injury and conduct of defendant); Lozano v. Smith, 718 F.2d 756, 768 (5th Cir.1983) (no liability where no causal connection between an act of sheriff and the constitutional violation sought to be addressed). The district judge found no act or omission of fault on the part of the police chief which could be causally related to the injury here, and those findings are clearly correct. There can therefore be no basis for liability under either the state law or Sec. 1983.
 
 III. OFFICER OLSON'S APPEAL
 
 15
 A. The Civil Rights Claim Under 42 U.S.C. Sec. 1983
 
 
 16
 Under the district court's findings, we discern no constitutional deprivation in this case. While the judge said that Officer Olson used excessive force against David Young, his entire findings and conclusions demonstrate that the judge found fault only with the way Officer Olson stopped and confronted Young and not with the shooting itself. The sense in which he finds excessive force is that the force would have been avoided if Olson had approached Young as required by proper police procedures. The court does not reject Olson's claim that he fired his gun in self-defense when he thought his own life was threatened. The court found that "Young apparently made a movement as if to duck back into the car to retrieve something. Olson, who had his gun drawn, interpreted this threateningly and fired, fatally wounding Young." The court expressly found that the six errors of police procedure enumerated above, "when taken together caused the death of David Young." In rejecting the qualified immunity of Olson, the court said: "While all witnesses agreed that at the moment David Young made a sudden movement Olson was justified in shooting, it would be anomalous indeed to suppose that a police officer may escape liability where the dangerous situation was created entirely by the officer's disregard of prudent procedure."
 
 
 17
 The extent of Sec. 1983 liability is not fully defined as yet by the Supreme Court, but we know that this statute creates no substantive right and provides remedies only for deprivations of rights established elsewhere in the Constitution or federal statutes. Those rights are in no wise as broad as an injured person enjoys under state tort law. See Parratt v. Taylor, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420, 434 (1981); Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); Paul v. Davis, 424 U.S. 693, 698, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405, 411 (1976). The Supreme Court has repeatedly said that the first issue to be resolved in these cases is to identify the right assured by federal law which the injured party claims to have been infringed. Aside from the procedural protections of some liberty or property interest, the Constitution protects persons from state action against certain substantive rights which the Supreme Court has held to be incorporated or implied in the due process clause of the Fourteenth Amendment. The Fourth Amendment, for example, bestows a right against unreasonable seizure. It was that substantive constitutional right which the Court saw as the predicate for the Sec. 1983 action against a Tennessee police officer, and the right not to be unreasonably seized was violated when the officer used deadly force against a fleeing felon posing no significant threat of death or serious physical injury to the officer or others. Tennessee v. Garner, --- U.S. ----, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).
 
 
 18
 In the recent case of City of Oklahoma City v. Tuttle, --- U.S. ----, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the jury found that the officer who shot the victim acted in "good faith and with a reasonable belief in the legality of his actions." Though this is not necessarily the same as determining that reasonable force was used, the plurality opinion states that the Court has never held "under circumstances such as these that there has been a deprivation of life 'without due process of law.' " Id. at ---- n. 4, 105 S.Ct. at 2433 n. 4, 85 L.Ed.2d at 800 n. 4. The constitutional right to be free from unreasonable seizure has never been equated by the Court with the right to be free from a negligently executed stop or arrest. There is no question about the fundamental interest in a person's own life, but it does not follow that a negligent taking of life is a constitutional deprivation. The government has the right to employ deadly force under some circumstances, and there are interests to be balanced in deciding the reach of constitutional demand. See Tennessee v. Garner, --- U.S. at ----, 105 S.Ct. at 1700, 85 L.Ed.2d at 8-9.
 
 
 19
 This circuit has rejected the negligent deprivation of a liberty interest as a constitutional violation. Thibodeaux v. Bordelon, 740 F.2d 329 (5th Cir.1984). We have looked for the element of abuse of government power if tortious harm is to be raised to the level of a constitutional violation. Rankin v. City of Wichita Falls, 762 F.2d 444 (5th Cir.1985); Williams v. Kelley, 624 F.2d 695 (5th Cir.1980), cert. denied, 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981). Where a law enforcement officer inflicted personal injury on the plaintiff, we weighed "the amount of force used in relationship to the need presented, the extent of the injury inflicted and the motives of the state officer." Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir.1981).
 
 
 20
 If Young's movements gave Olson cause to believe that there was a threat of serious physical harm, Olson's use of deadly force was not a constitutional violation. Tennessee v. Garner, --- U.S. at ----, 105 S.Ct. at 1701, 85 L.Ed.2d at 9-10. The only fault found against Olson was his negligence in creating a situation where the danger of such a mistake would exist. We hold that no right is guaranteed by federal law that one will be free from circumstances where he will be endangered by the misinterpretation of his acts.
 
 
 21
 B. Olson's Liability Under State of Texas Tort Law
 
 
 22
 When we come to the tort action, we have entirely different questions. The district judge has found, in effect, that Olson's negligent conduct created a danger, both to himself and to Young, and by that conduct Olson caused a foreseeable harm. In view of the strong testimony by George Kirkham, a nationally recognized authority on police procedure, we cannot deny that the district judge took a permissible view of the evidence. That ends our review of the findings below. Anderson v. City of Bessemer City, --- U.S. ----, ----, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518, 529 (1985).
 
 
 23
 To determine Sec. 1983 liability we weigh the wrongful conduct as well as the harm in the process of deciding whether or not there has been a deprivation of a constitutional right. In the tort action after identifying the negligence, we need only determine whether the harm was a foreseeable consequence caused by the negligence. If a person of ordinary intelligence should have anticipated danger to another by his negligence, he is liable even though he did not believe that harm would occur and could not anticipate just how the injuries would grow out of the particular dangerous situation. See Missouri Pacific Railroad v. American Statesman, 552 S.W.2d 99, 103-04 (Tex.1977). We therefore affirm the district court's judgment on the basis of the pendent state claim.
 
 IV.
 
 24
 The plaintiffs' contend that they should have been awarded attorney's fees. Having held that the Sec. 1983 action is not maintainable, we reject this contention. See Kentucky v. Graham, --- U.S. ----, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); Raley v. Fraser, 747 F.2d 287, 290-92 (5th Cir.1984).
 
 
 25
 AFFIRMED.
 
 E. GRADY JOLLY, specially concurring:
 
 26
 I concur in all that Judge Reavley has written, but concur in affirming the judgment only because the question of comparative negligence was not raised in the district court, nor, for that matter, in this court.
 
 
 
 *
 District Judge of the Northern District of Texas, sitting by designation