51 Cal.Rptr.3d 846 (2006)
145 Cal.App.4th 701
Bonnie HERNANDEZ, as Administrator, etc., et al., Plaintiffs and Appellants,
v.
CITY OF POMONA et al., Defendants and Respondents.
No. B182437.
Court of Appeal of California, Second District, Division Seven.
December 6, 2006.
*849 Moreno, Becerra, Guerrero & Casillas, Danilo J. Becerra, Montebello, and Lizette V. Espinosa for Plaintiffs and Appellants.
Alvarez-Glasman & Colvin and Roger A. Colvin, West Covina, and Sean M. Beehler for Defendants and Respondents.
JOHNSON, J.
The plaintiffs in this negligence action are the parents, wife, seven minor children and estate of decedent George Hernandez who, while fleeing arrest, was shot 22 times by police officers of the City of Pomona. Defendants are the four officers involved in the shooting and the city.
Plaintiffs appeal from the judgment after the trial court sustained defendants' demurrer to their complaint without leave to amend. The issue is whether, in a civil rights action filed in federal court, the jury's special verdict in favor of the city and three of its police officers and the district court's Rule 50 judgment in favor of a fourth officer preclude the same plaintiffs from bringing a negligence action in state court against the same defendants based on the same facts. Under the circumstances here we conclude police officers cannot escape liability for negligence if they put themselves unnecessarily in harm's way and must then shoot their way out of it.[1]

FACTS AND PROCEEDINGS BELOW

The Federal Civil Rights Action
Plaintiffs initially sued the police officers and the city in federal district court alleging causes of action for negligence under state law and violation of Hernandez's civil rights under federal law[2] specifically the right under the Fourth *850 Amendment to be free from "unreasonable" seizure.[3] The complaint stated: "[Hernandez] was being chased on foot by [the officers] and indicated to them that he was unarmed. He turned towards them and raised his empty hands in the air. At that time, [the officers] fired their firearms striking [Hernandez] with fatal gunshots." Plaintiffs further alleged Hernandez was unarmed and the shooting was "without reasonable cause."
The district court bifurcated the state and federal claims and only the federal civil rights cause of action went to trial. The jury returned a special verdict in favor of the city and three of the officers, Cooper, Devee and Luna, finding these officers did not "violate George Hernandez's Fourth and Fourteenth Amendment rights by using excessive force against him." The jury could not reach a verdict as to the fourth officer, Sanchez.
Following the trial, defense counsel moved for judgment as a matter of law in favor of Sanchez under Rule 50 of the Federal Rules of Civil Procedure.[4] Based on the evidence presented at trial, the district court found Sanchez and the other officers had cause to believe Hernandez was armed, even though it turned out he was not. "Sanchez found himself in a situation that he reasonably believed would threaten his life if he did not act immediately." Therefore, the court concluded, Sanchez's "use of deadly force was reasonable under the circumstances." The court further found Sanchez was entitled to qualified immunity even if he had violated Hernandez's civil rights because he "reasonably could have believed his conduct was lawful under the circumstances."
Based on the jury's verdict and the Rule 50 judgment in favor of the defendants the district court declined to assume supplemental jurisdiction over plaintiffs' state law negligence claim and dismissed it without prejudice. The court entered a judgment in favor of the city and the four police officers. This judgment is now final.

The State Court Action
After a final judgment was entered in the federal court plaintiffs commenced the present action against the same defendants alleging causes of action for assault and battery and negligence. The negligence cause of action was based on two theories. The first theory alleged "[t]he shooting of [Hernandez] occurred as a result of the absence of due care for the safety of others and constituted an unreasonable, unwarranted and excessive use of force, and said shooting manifested an unreasonable risk of injury to [Hernandez]." The second theory alleged that having inflicted a life-threatening injury on Hernandez defendants "intentionally and/or negligently ... failed, delayed and refrained from timely contacting or summoning medical aid [and] after said emergency medical assistance arrived, defendants knowingly and willfully prevented said assistance from being provided to [Hernandez]."
Defendants demurred to the complaint on the grounds the federal court judgment *851 and the applicable statute of limitations barred this action. They requested the trial court take judicial notice of the complaint, the judgment and the Rule 50 order in the federal court action as well as plaintiffs' tort claims filed with the city. The trial court granted this request.
As we discuss more fully below, the trial court rejected defendants' statute of limitations argument but concluded the federal court judgment barred plaintiffs' cause of action for negligence with respect to "any and all claims related to use of force and excessive force." (Italics added.) Plaintiffs interpreted this ruling to mean they could proceed on their negligence cause of action only on the theory defendants failed to timely summon medical assistance for Hernandez and interfered with the provision of such assistance once it arrived. Plaintiffs chose not to pursue their negligence cause of action solely on the theory defendants failed to provide timely medical assistance to Hernandez. Instead, plaintiffs and defendants entered into a stipulation in which plaintiffs struck and dismissed that allegation with prejudice in order to expedite plaintiffs' ability to challenge on appeal the court's ruling sustaining defendants' demurrer to the negligence cause of action based on the negligent shooting theory. The trial court approved the stipulation and ordered the complaint dismissed. Plaintiffs filed a timely appeal from the final judgment dismissing their action.[5]

DISCUSSION
California appellate courts have reached conflicting conclusions as to whether a judgment for defendants in a federal court action under 42 U.S.C. section 1983 (section 1983) alleging excessive force in violation of the Fourth Amendment precludes a state court action for negligence against the same defendants by the same plaintiffs.[6]
Based on the procedural circumstances of the case before us we conclude neither res judicata nor collateral estoppel preclude plaintiffs' negligence action against the defendants on the theory defendants' negligent conduct and violation of proper police procedures in effecting Hernandez's arrest was the proximate cause of their use of deadly force against Hernandez.

I. THE DOCTRINE OF RES JUDICATA DOES NOT BAR PLAINTIFFS' NEGLIGENCE CAUSE OF ACTION AGAINST THE OFFICERS.

A. Grounds For Asserting Res JudicataThe Primary Rights Theory
Under the doctrine of res judicata a valid, final judgment on the merits precludes parties or their privies from relitigating the same "cause of action" in a subsequent suit.[7] "Under this doctrine, all claims based on the same cause of action *852 must be decided in a single suit; if not brought initially, they may not be raised at a later date. `"Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief."' [Citation.]"[8]
California law defines a "cause of action" for purposes of the res judicata doctrine by analyzing the primary right at stake: "[A] `cause of action' is comprised of a `primary right' of the plaintiff, a corresponding `primary duty of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] A pleading that states the violation of one primary right in two causes of action contravenes the rule against `splitting' a cause of action. [Citation.]"[9] "As far as its content is concerned, the primary right is simply the plaintiffs right to be free from the particular injury suffered. [Citation.] It must therefore be distinguished from the legal theory on which liability for that injury is premised."[10]
"`[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery. [Citations.]'"[11] "`... If the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.... The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable. [Citations.]' [Citation.]"[12]
California courts have disagreed over whether an action for violation of the Fourth Amendment's prohibition against unreasonable seizures implicates the same primary right as an action for violation of the right to be free from negligent personal injury.
In Mattson v. City of Costa Mesa plaintiff filed a section 1983 action against the city and two of its police officers alleging the officers had "knowingly and without provocation or probable cause assaulted [him] and then arrested him[.]"[13] The complaint also alleged a cause of action for negligence based on the same facts.[14] The federal court declined to take jurisdiction over this supplemental state claim. Following *853 a unanimous verdict for the defendants, plaintiff served the same defendants with a state court action alleging the officers had "`negligently assaulted, battered and arrested plaintiff and `mishandled his personal property.'"[15] The trial court sustained the defendants' demurrer on the ground plaintiffs action was barred by res judicata and collateral estoppel and entered a judgment of dismissal.[16]
The Court of Appeal affirmed on the ground the doctrine of res judicata barred the second action.[17] The court reasoned "the single most determinative factor" in deciding whether two suits involve the same primary right "is the substantive right of the plaintiff allegedly violated, the harm suffered."[18] Here, the court held, "the right to be free from personal injury, and ... the right to be free from arrest unless pursuant to a warrant valid on its face or upon reasonable cause and, in either event, without excessive force" constituted the same primary right.[19]
In Harris v. Grimes a police officer shot and killed Harris's unarmed son during the nighttime execution of a search warrant.[20] Harris filed a complaint in federal court against the officer alleging civil rights violations under section 1983 and a cause of action for negligence under state law. The case went to trial only on the section 1983 claim. The federal court bifurcated the state law negligence claim explaining "it feared trying both claims would confuse the jury because they involved `contradictory standards of conduct for imposing liability'intentional conduct for the civil rights claim, but only negligence for the state law claim."[21] A jury rendered a verdict for the officer on the civil rights action and the court dismissed the negligence claim without prejudice.[22] Harris refiled her negligence claim in state court. That case was dismissed for reasons not relevant to the issue before us. Harris then filed a malpractice action against one of the attorneys who had handled the state action. The defendant contended Harris could not establish damages for malpractice because she could not have succeeded on her action against the police officer as that action was barred by res judicata and collateral estoppel. The trial court agreed and entered judgment for the defendant.[23]
The Court of Appeal reversed. It held the federal jury's general verdict for the police officer was not res judicata in Harris's state court action against the officer for negligence. The court rejected the defendant's contention an action for use of excessive force under the Fourth Amendment and an action for negligence involved the same primary right to be free from unreasonable use of force. "`[Reasonable' conduct in civil rights law," the court *854 held, "does not always mean reasonable conduct under negligence law. The two concepts are not the same."[24]
In City of Simi Valley v. Superior Court the decedent, Bayer, led the city police on a high speed chase which ended with a confrontation and standoff in a residential neighborhood. While sitting in his car Bayer pulled out a handgun, cocked it and pointed it at the officers. The officers fired several rounds of tear gas to try to extract Bayer from his car. Bayer got out of the car with his gun drawn whereupon the officers shot and killed him.[25] Bayer's family filed an action in federal court against the city under section 1983 alleging that in firing tear gas into the car the officers used excessive force in violation of the Fourth Amendment. They accompanied this cause of action with a state law claim for wrongful death. The federal court granted defendants' motion for summary judgment on the ground "the police officers' `conduct was objectively reasonable' and that the officers did not use excessive force in firing tear gas to extract decedent from the car."[26] The court declined to exercise jurisdiction over the state law claim and dismissed it without prejudice.[27] The family then filed an action against the city in state court alleging a cause of action for wrongful death. The trial court overruled the city's demurrer which asserted the action was barred by res judicata and collateral estoppel.[28]
The Court of Appeal issued a writ of mandate directing the trial court to sustain the demurrer on the ground of res judicata. Although the court's rationale is not clear it apparently concluded, contrary to Harris v. Grimes[29] the federal and state actions were premised upon violation of the same primary rightthe right to be free from unreasonable use of force.[30]

B. An Excessive Force Action Under The Fourth Amendment And A Personal Injury Action Under Common Law Negligence Do Not Involve The Same Primary Right.
We hold the doctrine of res judicata does not apply to the case before us. The primary right at issue in the section 1983 action was Hernandez's right under the Fourth Amendment to be free from unreasonable seizure of his person.[31] The primary right in the negligence action is Hernandez's right to be free from injury to his person.[32] That some of the same facts are involved in both actions is not determinative; the significant factor is the nature *855 of the harm.[33] The nature of the harm in the former action was the violation of a constitutionally protected right. The nature of the harm in the latter action is the violation of a common law right. As the United States Supreme Court has observed, the federal Constitution and traditional tort law "do not address the same concerns" and the Constitution is not to be used as a federal tort statute.[34]

C. A Federal Court's Discretionary Refusal To Exercise Supplemental Jurisdiction Over A State Claim Does Not Bar Further Litigation Of The State Claim In State Court.
As a separate and independently sufficient ground for not applying the doctrine of res judicata we hold that even if only a single primary right (and therefore a single cause of action) is involved in this federal court's discretionary refusal to exercise supplemental jurisdiction over a state claim does not bar further litigation of the state claim in state courtat least when the federal court does not dismiss the state-based causes of action until after it has decided the federal civil rights claims.
In Lucas v. County of Los Angeles the court explained: "This theory of primary rights does not aid respondent because, as the trial court astutely observed, it was not appellant who made the decision to `split' causes of action between state and federal court. Appellant tendered the entire case to the federal court, which had pendent jurisdiction to determine the state causes of action but declined to exercise it. [Citations.] A federal court's discretionary refusal to exercise pendent jurisdiction over a state claim does not bar further litigation of the state claim in state court. [Citation.]"[35] In Harris v. Grimes the court agreed with the reasoning in Lucas, stating: "Lucas is consistent with the Restatement Second of Judgments' expression of widely held legal principles, which distinguishes between a party's splitting of its causes of action and a court's doing the same thing."[36]
*856 We conclude, therefore, the trial court erred in sustaining the demurrers of the city and the four officers on the ground of res judicata.

II. THE DOCTRINE OF COLLATERAL ESTOPPEL DOES NOT BAR PLAINTIFFS' NEGLIGENCE CAUSE OF ACTION AGAINST THE FOUR OFFICERS FOUND NOT LIABLE FOR VIOLATING HERNANDEZ'S CIVIL RIGHTS.

A. Grounds For Asserting Collateral Estoppel
It is well-settled in California a second action between the same parties on a different cause of action is not precluded by a previous judgment but the previous judgment operates as an estoppel to litigating such issues in the second action as were actually litigated and adjudicated in the first.[37] Thus, "a judgment based on a general verdict, in an action wherein a determination of any one of several issues may have been the basis for that verdict, does not authorize the application of the doctrine of estoppel by judgment to such issues in a subsequent action under circumstances where ... it is necessary to identify the specific issue determined in the former action[.]"[38]

B. Elements Of A Cause Of Action Under 42 U.S.C. Section 1983Excessive Force
To establish a claim under, section 1983 a plaintiff must prove the deprivation of a right secured by the Constitution or laws of the United States, the deprivation was committed by a person acting under color of state law and the person acted intentionally, recklessly or with gross negligence or in some other way more blameworthy than mere negligence.[39]
Police officers attempting to make an arrest are clearly acting under color of state law.
Claims of excessive force by police officers in effectuating an arrest are justiciable under section 1983 because they implicate the Fourth Amendment's guarantee to "the people" of the right "to be secure in their persons ... against unreasonable searches and seizures." As the United States Supreme Court held in Graham v. Connor, "claims that law enforcement officers have used excessive forcedeadly or notin the course of an arrest, investigatory stop, or other `seizure' of a free citizen should be analyzed under the Fourth Amendment and its `reasonableness' standard[.][40] In an excessive force case the "reasonableness" inquiry is an objective one. "[T]he question is whether the officers' actions are `objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying *857 intent or motivation.... An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use kof force constitutional."[41]
Although the United States Supreme Court has never directly ruled on the question it is generally accepted a cause of action under section 1983 for use of excessive force in violation of the Fourth Amendment must be based on something more than mere negligence. This view is supported by the court's observation in Baker v. McCollan"Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law"[42] and by its statement in Daniels v. Williams["I]njuries inflicted by governmental negligence are not addressed by the United States Constitution[.][43] In the Ninth Circuit at least, liability under section 1983 requires proof "the acts or omissions of the defendant were intentional[.]"[44]
Finally, even if the facts show the officer's conduct violated, the Fourth Amendment "[qualified immunity shields the officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."[45]

C. The Jury's Special Verdict And The District Court's Rule 50 Order Preclude The Plaintiffs From Relitigating The Issue Of Whether The Defendants Were Negligent In Their Use Of Deadly Force.
In the federal civil rights action the court instructed the jury: "The reasonableness inquiry in an excessive force case is an objective one: the question is whether the actions of the police were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. The reasonableness of the use of force should be judged from the perspective of a reasonable officer on the *858 scene. A law enforcement officer has the right to use such force as is reasonably necessary under the circumstances to make a lawful arrest. An unreasonable seizure occurs when a law enforcement officer uses excessive force in making a lawful arrest. In deciding whether excessive force was used, you should consider the totality of the circumstances at the time. Whether force is reasonably necessary or excessive is measured by the force a reasonable and prudent law enforcement officer would use under the circumstances. The use of deadly force is only justified when a reasonable law enforcement officer would reasonably believe that there was an immediate threat to the safety of the officer or others at the time the force was used."
Based on these instructions the jury returned a special verdict finding officers Cooper, Devee and Luna did not violate Hernandez's Fourth Amendment rights "by using excessive force against him."
Ruling on Sanchez's Rule 50 motion, the trial court concluded: "Sanchez found himself in a situation that he reasonably believed would threaten his life if he did not act immediately." Therefore, Sanchez's "use of deadly force was reasonable under the circumstances."
Under California law the classic definition of ordinary negligence "`is the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do; moreover it is not absolute or intrinsic, but always relative to some circumstance of time, place or person.' [Citation.]"[46]
Thus, in order to prevail on the theory the officers were negligent in their use of deadly force plaintiffs must prove Cooper, Devee, Luna and Sanchez failed to exercise the degree of care a reasonable police officer would have exercised under the circumstances. Whether the officers acted with reasonable care is precisely the issue resolved by the federal jury and the trial court when each specifically concluded from the perspective of a reasonable officer on the scene, taking into account the facts and circumstances confronting them, the officers' conduct was objectively reasonable.[47]
We conclude, therefore, plaintiffs cannot proceed with a negligence action against defendants on the theory the defendant officers were negligent in their use of deadly force against Hernandez.
This conclusion, however, does not end the plaintiffs negligence action because, as we explain below, the federal civil rights action did not adjudicate the issue of the officer's pre-shooting negligence.

D. The Judgment For The Four Police Officers In The Section 1983 Action Did Not Adjudicate The Issue Of The Officers' Pre-Seizure Negligence.
Although the special verdict finding three of the officers did not use "excessive force" and the trial court's finding the fourth officer's use of deadly force was not *859 "unreasonable" collaterally estop the plaintiffs from alleging a cause of action for common law negligence on the theory the officers failed to use due care in their use of force against Hernandez, neither the jury's special verdict nor the trial court's Rule 50 finding addressed the question whether the officers were negligent in creating a situation in which it was reasonable for them to use deadly force.
The leading case on what might be termed "pre-seizure negligence"[48] is Young v. City of Killeen, Tex., in which the Fifth Circuit upheld a verdict for the plaintiff in a police shooting case even though the evidence was not sufficient to hold the officer liable under section 1983 for use of excessive force. The court concluded the evidence supported liability under Texas law for "negligent conduct" which "created a danger" to the officer and the decedent thereby causing a foreseeable harm.[49]
In Young, the officer observed Young purchasing drugs from a person in a parking lot. The officer attempted to block Young's exit from the parking lot by pulling his police car in front of Young's car. The officer then left his car and ordered Young and his passengers out of theirs. When Young reached down toward the seat or floor board the officer believed he was going for a gun. The officer fired, fatally wounding Young. After a bench trial, the district court found the officer "acted negligently and contrary to good police procedure" and awarded damages to Young's widow.[50]
On the officer's appeal the Fifth Circuit held the verdict could not be sustained on the ground the officer used excessive force against Young. "If Young's movements gave [the officer] cause to believe that there was a threat of serious physical harm, [the officer's] use of deadly force was not a constitutional violation."[51] But, the court explained, "[w]hen we come to the tort action, we have entirely different questions."[52] With respect to the negligence cause of action, the district court "found, in effect, [the officer's] negligent conduct created a danger both to himself and to Young, and by that conduct ... caused foreseeable harm."[53] The court adopted the district court's rationale that although the officer "`was justified in shooting, it would be anomalous indeed to suppose that a police officer may escape liability where the dangerous situation was created entirely by the officer's disregard of prudent procedure.'"[54] Thus, Young stands for the proposition an officer's conduct which enhances the risk deadly force will be required is contrary to good police procedure and may create liability in negligence although no civil rights violation may have occurred.
In the present case the plaintiffs allege "[t]he shooting of [Hernandez] occurred as a result of the absence of due care for the safety of others" on the part of the officers. We believe this allegation is sufficient *860 to plead negligence on the part of the officers based on the theory their conduct leading up to the shooting, including the high-speed pursuit, foot chase, and release of a pursuit dog created an unreasonable risk of harm to themselves and Hernandez.[55]
Our decision in this case is not inconsistent with the decision in City of Simi Valley v. Superior Court, discussed above, which held the decedent's family could not sue in state court for negligence based on the officers' pre-seizure conduct after their federal civil rights action was dismissed on a motion for summary judgment. The Simi Valley case is distinguishable because there the federal court specifically ruled the officers' pre-seizure conduct was objectively reasonable.[56]
In the Simi Valley case the decedent, Bayer, led the police on a high speed freeway chase ending up in a standoff in a residential neighborhood. Bayer's father, stepmother, daughter and brother arrived at the scene and explained to the police Bayer was depressed and suicidal. They asked to talk to him but the police denied their request. In the course of the standoff, while still in his car, Bayer displayed a handgun, cocked it and pointed it at the officers. Concerned for their safety and the safety of the local residents, the police fired several rounds of tear gas into the car in an attempt to force Bayer out. Bayer got out of the car with his handgun drawn. The police shot and killed him.[57]
Bayer's survivors filed a section 1983 action in federal court. In that action they did not allege the officers used excessive force in shooting Bayer. Rather, they alleged the officers used excessive force in firing the tear gas into his car. The federal district court granted the officers' motion for summary judgment on the grounds the undisputed facts showed the officers' conduct in using tear gas to try to make Bayer leave his car was objectively reasonable.[58] The plaintiffs then sued in state court alleging the officers negligently used tear gas to extract Bayer from his car.[59] The Court of Appeal issued a writ directing the trial court to sustain the officers' demurrer to the complaint. The court reasoned: "In the federal action, summary judgment was granted on the adverse factual finding that the officers' conduct and use of tear gas was `objectively reasonable.' Plaintiffs have recast the *861 action based on theories of negligence. However, these theories are not viable in state court because the federal action has established that the officers' actions were objectively reasonable."[60]
In our case, unlike Simi Valley, neither the federal jury nor the district court made a finding the officers' pre-seizure conduct was objectively reasonable. In its special verdict the jury found Officers Cooper, Devee and Luna did not "violate George Hernandez' Fourth and Fourteenth Amendment rights by using excessive force against him." The district court found Officer Sanchez's "use of deadly force was reasonable under the circumstances." Therefore, the doctrine of collateral estoppel does not preclude plaintiffs' state court negligence action against all four officers.

E. Plaintiffs' Stipulation To Strike The Portions Of Their Complaint Which Survived Defendants' Demurrer Did Not Apply To Their Theory Of Pre-Seizure Negligence.
The question remains whether plaintiffs' stipulation to strike and dismiss with prejudice the portions of their complaint which survived defendants' demurrer applied to their theory of pre-seizure negligence. We conclude it did not.
We briefly summarize the proceedings leading up to the stipulation.
In its original order sustaining defendants' demurrer the trial court held the factual findings by the jury and the district court "that excessive force was not used in the shooting, i.e., that the deadly force used was `objectively reasonable' under the circumstances" meant "this issue is res judicata and collateral estoppel precludes relitigation of this same issue in this action." The court went on to say, however, "the wrongful death or negligence cause of action ... is based not just on the alleged use of excessive force. Claims are also made based on the failure to summon medical aid and not allowing aid to be rendered once available." The court noted these claims had not been adjudicated in the federal action and therefore were not subject to res judicata. "Therefore," the court concluded, "the demurrer to this cause of action is overruled." (Italics added.) Both sides asked the court to clarify whether it meant the demurrer was overruled as to the entire negligence cause of action or overruled only as to those theories not based on the use of excessive force. The court responded: "Defendants' demurrer to plaintiffs' second cause of action for wrongful death based upon negligence is clarified to mean that all of the plaintiffs' claims contained in said cause of action survive the demurrer with the exception of any and all claims related to use of force and excessive force, which do not survive the demurrer." (Italics added.)
Plaintiffs and defendants then entered into a stipulation plaintiffs would dismiss with prejudice "the remaining claims" contained in the negligence cause of action "which have survived the court's order" sustaining the defendants' demurrer as "clarified" by the court's subsequent order. The parties agreed the "remaining claims" were those "based on defendants' failure to summon medical aid and not allowing aid to be rendered once available." Specifically, plaintiffs agreed "to strike and dismiss all their claims contained in paragraphs 31, 32, and 37 of the second cause of action for negligence/wrongful death of the complaint."[61] *862 The parties further stipulated the plaintiffs' agreement to dismiss their remaining claims "is made solely for the purpose of expediting plaintiffs' appeal of the court's order ... sustaining defendants' demurrer ... as to all plaintiffs' claims based on the allegations of use of force and excessive force contained in the ... cause of action for negligence/wrongful death."
It is clear from this stipulation, especially from the specific reference to the paragraphs alleging failure to provide medical assistance, the parties understood the trial court's order, as "clarified," to sustain defendants' demurrer to the negligence cause of action on all theories except the failure to provide medical assistance and that this theory was the only one being dismissed by the plaintiffs.
We conclude, therefore, the stipulation did not waive plaintiffs' claim of negligence insofar as it is based on defendants' pre-seizure conduct.

III. THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL DO NOT BAR PLAINTIFFS' NEGLIGENCE CAUSE OF ACTION AGAINST THE CITY OF POMONA.
For reasons similar to those explained in parts I and II we hold res judicata and collateral estoppel do not bar plaintiffs' negligence cause of action against the City of Pomona.
The doctrine of respondeat superior does not apply to an action brought under section 1983.[62] In order to establish a municipality's liability the plaintiff must establish a constitutional violation by the municipality itself, for example a departmental regulation authorizing the use of constitutionally unreasonable force.[63] On the other hand, even if the evidence establishes a constitutional violation by the municipality, such as a regulation authorizing the use of constitutionally unreasonable force, the municipality will not be liable for damages unless the jury finds a municipal officer actually inflicted constitutionally unreasonable harm on the plaintiff.[64]
Under California law, however, municipalities are liable under the doctrine of respondeat superior for the negligent acts of municipal employees.[65] Municipalities are only immune from liability if their employees would be immune.[66] Nothing on the face of plaintiffs' complaint suggests the officers would be immune from liability under California law.

IV. PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND THEIR COMPLAINT TO PLEAD THEIR PRE-SEIZURE NEGLIGENCE THEORY.
We have some doubt the plaintiffs' complaint adequately pleads their pre-seizure negligence theory although it does allege: "The shooting of plaintiffs' decedent occurred as a result of the absence of due care for the safety of others...." The *863 complaint also contains a cause of action for battery which has been dismissed. We believe the appropriate disposition is to reverse the order sustaining defendants' demurrer without leave to amend and remand the cause to permit the plaintiffs to file a "clean" amended complaint alleging negligence based on their pre-seizure theory.[67]

DISPOSITION
The judgment is reversed and the cause is remanded to the trial court with directions to vacate its order sustaining defendants' demurrer without leave to amend and enter a new order sustaining the demurrer with leave to amend to allege a cause of action for negligence based on pre-seizure negligence. Plaintiffs are awarded their costs on appeal.
I concur: WOODS, J.
PERLUSS, P.J., Concurring.
I concur in the judgment and fully agree with the analysis supporting the majority's conclusion the Estate of George Hernandez and Hernandez's parents, wife and minor children are precluded by the doctrine of collateral estoppel from relitigating whether Officers Dennis Cooper, Robert Devee, Anthony Luna and Bert Sanchez were negligent in their use of deadly force but may pursue (following an appropriate amendment of their complaint) a tort claim predicated on the theory the officers were negligent in creating a situation in which it was reasonable for them to use deadly force. I write separately to explain the more limited basis on which I also agree with the majority's conclusion the negligence claim is not barred by the doctrine of res judicata.
As the majority explains, once a valid final judgment on the merits has been entered in a lawsuit, the parties or their privies are precluded by the doctrine of res judicata from relitigating the same "cause of action" in a subsequent suit. (Mycogen Corp. v. Monsanto Co. (2002) 28 Cal.4th 888, 896, 123 Cal.Rptr.2d 432, 51 P.3d 297; Slater v. Blackwood (1975) 15 Cal.3d 791, 795, 126 Cal.Rptr. 225, 543 P.2d 593.) Determining whether res judicata applies necessarily requires analysis of the primary rights at issue because "the violation of a single primary right gives rise to but a single cause of action." (Crowley v. Katleman (1994) 8 Cal.4th 666, 681, 34 Cal.Rptr.2d 386, 881 P.2d 1083.)
Based on well-established case law, discussed and quoted in the majority opinion, I respectfully disagree with the majority's conclusion the federal civil rights cause of action asserted pursuant to title 42 of the United States Code section 1983 by Hernandez's estate and his survivors and their state law negligence and wrongful death causes of action arose from the violation of different primary rights. (See, e.g., Tensor Group v. City of Glendale (1993) 14 Cal.App.4th 154, 160, 17 Cal.Rptr.2d 639 ["`[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery. [Citations.]' "]; Crowley v. Katleman, supra, 8 Cal.4th at p. 681, 34 Cal.Rptr.2d 386, 881 P.2d 1083 ["the primary right is simply the plaintiffs right to be free from the particular injury suffered. [Citation.] It must therefore be distinguished from the legal theory on which liability for that injury is premised"].)
The plaintiffs suffered a single injury from a single set of circumstances: The *864 death of Hernandez at the hands of Pomona police officers who had allegedly acted unreasonably in using deadly force to apprehend him at the conclusion of a highspeed chase. "The allegation in the state court action that defendants' conduct was negligent as opposed to having been accompanied by a mental state necessary to support a federal civil rights action is simply a different way of expressing an invasion of the same primary rights or the assertion of a different legal theory for recovery." (Mattson v. City of Costa Mesa (1980) 106 Cal.App.3d 441, 446, 447-448, 164 Cal.Rptr. 913 [the right to be free from personal injury and the right to be free from arrest without excessive force "are two aspects of plaintiffs interest in personal security and integrity"]; see City of Simi Valley v. Superior Court (2003) 111 Cal.App.4th 1077, 1082-1083, 4 Cal. Rptr.3d 468 [res judicata precludes litigation of state law cause of action for wrongful death after unsuccessful federal civil rights action].)[1]
Nonetheless, even though a single primary right (and therefore a single cause of action) is involved, I agree with the majority's alternate holding that a federal court's discretionary refusal to exercise supplemental jurisdiction over a state claim does not bar further litigation of the state claim in state courtat least when the federal court does not dismiss the state-based causes of action until after it has decided the federal civil rights claims. (Lucas v. County of Los Angeles (1996) 47 Cal. App.4th 277, 286, 54 Cal.Rptr.2d 655; see Harris v. Grimes (2002) 104 Cal.App.4th 180, 188, 127 Cal.Rptr.2d 791.) Accordingly, I agree the demurrer by the four officers and the City of Pomona to the state court negligence and wrongful death action filed by Hernandez's estate and his survivors was not properly sustained under the doctrine of res judicata.
NOTES
[1] We granted a rehearing in this appeal in order to consider evidence which was not included in the original record on appeal. After we filed our opinion in this case (Hernandez v. City of Pomona (2006) 41 Cal. Rptr.3d 517 (rehearing grntd. May 11, 2006)) defendants petitioned for rehearing and asked us to take judicial notice of the special verdict in the federal court action. We then requested defendants also submit a copy of the jury instructions in the federal case. To expedite resolution of this action and conserve judicial and litigant resources we augment the record on appeal by taking judicial notice of the special verdict and jury instructions in the federal action.
[2] 42 United States Code section 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
[3] The use of excessive force in making an arrest is a violation of the Fourth Amendment's prohibition against "unreasonable" seizure. (Graham v. Connor (1989) 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443.)
[4] Under Rule 50, subdivision (a) the trial court may determine an issue against a party and grant a motion for judgment as a matter of law against that party "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."
[5] Defendants have not pursued their statute of limitations argument on appeal and plaintiffs have not pursued their cause of action for assault and battery.
[6] See Mattson v. City of Costa Mesa (1980) 106 Cal.App.3d 441, 445-448, 164 Cal.Rptr. 913 (state court action barred by res judicata but not by collateral estoppel); Harris v. Grimes (2002) 104 Cal.App.4th 180, 186-187, 127 Cal.Rptr.2d 791 (state court action not precluded by res judicata or collateral estoppel); City of Simi Valley v. Superior Court (2003) 111 Cal.App.4th 1077, 1082-1083, 4 Cal.Rptr.3d 468 (state court action barred by res judicata).
[7] Mycogen Corp. v. Monsanto Co. (2002) 28 Cal.4th 888, 896, 123 Cal.Rptr.2d 432, 51 P.3d 297; Slater v. Blackwood (1975) 15 Cal.3d 791, 795, 126 Cal.Rptr. 225, 543 P.2d 593.
[8] Mycogen Corp. v. Monsanto Co., supra, 28 Cal.4th at page 897, 123 Cal.Rptr.2d 432, 51 P.3d 297.
[9] Crowley v. Katleman (1994) 8 Cal.4th 666, 681, 34 Cal.Rptr.2d 386, 881 P.2d 1083 [suit for malicious prosecution lies for bringing an action charging multiple grounds of liability when some but not all of those grounds were asserted with malice and without probable cause].
[10] Crowley v. Katleman, supra, 8 Cal.4th at page 681, 34 Cal.Rptr.2d 386, 881 P.2d 1083.
[11] Tensor Group v. City of Glendale (1993) 14 Cal.App.4th 154, 160, 17 Cal.Rptr.2d 639.
[12] Tensor Group v. City of Glendale, supra, 14 Cal.App.4th at page 160, 17 Cal.Rptr.2d 639.
[13] Mattson v. City of Costa Mesa, supra, 106 Cal.App.3d at page 444, 164 Cal.Rptr. 913.
[14] Mattson v. City of Costa Mesa, supra, 106 Cal.App.3d at page 444, 164 Cal.Rptr. 913.
[15] Mattson v. City of Costa Mesa, supra, 106 Cal.App.3d at page 444, 164 Cal.Rptr. 913.
[16] Mattson v. City of Costa Mesa, supra, 106 Cal.App.3d at page 445, 164 Cal.Rptr. 913.
[17] Mattson v. City of Costa Mesa, supra, 106 Cal.App.3d at pages 446-448. 164 Cal.Rptr. 913.
[18] Mattson v. City of Costa Mesa, supra, 106 Cal.App.3d at page 447, 164 Cal.Rptr. 913.
[19] Mattson v. City of Costa Mesa, supra, 106 Cal.App.3d at page 447, 164 Cal.Rptr. 913.
[20] Harris v. Grimes, supra, 104 Cal.App.4th at page 183, 127 Cal.Rptr.2d 791.
[21] Harris v. Grimes, supra, 104 Cal.App.4th at page 183, 127 Cal.Rptr.2d 791.
[22] Harris v. Grimes, supra, 104 Cal.App.4th at page 183, 127 Cal.Rptr.2d 791.
[23] Harris v. Grimes, supra, 104 Cal.App.4th at pages 184-185, 127 Cal.Rptr.2d 791.
[24] Harris v. Grimes, supra, 104 Cal.App.4th at page 187, 127 Cal.Rptr.2d 791.
[25] City of Simi Valley v. Superior Court, supra, 111 Cal.App.4th at pages 1080-1081, 4 Cal. Rptr.3d 468.
[26] City of Simi Valley v. Superior Court, supra, 111 Cal.App.4th at page 1081, 4 Cal.Rptr.3d 468.
[27] City of Simi Valley v. Superior Court, supra, 111 Cal.App.4th at page 1079, 4 Cal.Rptr.3d 468.
[28] City of Simi Valley v. Superior Court, supra, 111 Cal.App.4th at pages 1079, 1082-1083, 4 Cal.Rptr.3d 468.
[29] Harris v. Grimes, supra, 104 Cal.App.4th at page 187, 127 Cal.Rptr.2d 791.
[30] City of Simi Valley v. Superior Court, supra, 111 Cal.App.4th at pages 1083-1084, 4 Cal. Rptr.3d 468.
[31] United States Constitution, Fourth Amendment; LA. Durbin, Inc. v. Jefferson Nat. Bank (11th Cir.1986) 793 F.2d 1541, 1550.
[32] Slater v. Blackwood, supra, 15 Cal.3d at page 795, 126 Cal.Rptr. 225, 543 P.2d 593.
[33] Agarwal v. Johnson (1979) 25 Cal.3d 932, 954, 160 Cal.Rptr. 141, 603 P.2d 58.
[34] Daniels v. Williams (1986) 474 U.S. 327, 333, 106 S.Ct. 662, 88 L.Ed.2d 662.
[35] Lucas v. County of Los Angeles (1996) 47 Cal.App.4th 277, 286, 54 Cal.Rptr.2d 655.
[36] Harris v. Grimes, supra, 104 Cal.App.4th at page 188, 127 Cal.Rptr.2d 791. In Acuña v. Regents of University of California (1997) 56 Cal.App.4th 639, 650-651, 65 Cal.Rptr.2d 388, Division Six of this court, which had one year earlier decided Lucas v. County of Los Angeles, supra, 47 Cal.App.4th at page 286, 54 Cal.Rptr.2d 655, held res judicata barred a separate state court action when the federal court's dismissal of the state law claims occurred prior to the determination of the merits of the federal claims asserting the same primary rights. Division Six employed the same rationale to reach the same conclusion six years later in City of Simi Valley v. Superior Court, supra, 111 Cal.App.4th at pages 1083-1084, 4 Cal.Rptr.3d 468. Similarly, in Mattson v. City of Costa Mesa, supra, 106 Cal.App.3d at page 455, 164 Cal.Rptr. 913, which also applied the doctrine of res judicata to bar state court litigation of state law claims dismissed by the federal court, the dismissal of the pendent state law claims occurred prior to the trial of the federal claim; and the court emphasized that the plaintiff had knowingly proceeded to trial on the federal claim alone.

Although the federal court's dismissal of the state negligence claims in Harris v. Grimes, supra, 104 Cal.App.4th at pages 187-189, 127 Cal.Rptr.2d 791, occurred after summary judgment was granted in favor of the defendant officers and thus fell on the Lucas v. County of Los Angeles, supra, 47 Cal.App.4th at page 286, 54 Cal.Rptr.2d 655, side of the before-or-after-merits-determination line, Division Eight expressly disagreed with Mattson v. City of Costa Mesa, supra, 106 Cal.App.3d at page 455, 164 Cal.Rptr. 913, holding it did not constitute the impermissible splitting of a single cause of action for a plaintiff to refile in state court after a federal court had dismissed a state law claim within its supplemental jurisdiction even if that dismissal occurred prior to summary judgment or trial on the merits. Because the dismissal in this case occurred only after trial, however, our own resolution of that conflict can await another day.
[37] Todhunter v. Smith (1934) 219 Cal. 690, 695, 28 P.2d 916; 7 Witkin, California Procedure (4th ed.1997) section 354, page 915.
[38] Stout v. Pearson (1960) 180 Cal.App.2d 211, 216, 4 Cal.Rptr. 313.
[39] 42 United States Code section 1983 (see footnote 2, above); West v. Atkins (1988) 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40; see Daniels v. Williams, supra, 474 U.S. at page 328, 106 S.Ct. 662.
[40] Graham v. Connor, supra, 490 U.S. at page 395, 109 S.Ct. 1865.
[41] Graham v. Connor, supra, 490 U.S. at page 397, 109 S.Ct. 1865.
[42] Baker v. McCollan (1979) 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433.
[43] Daniels v. Williams, supra, 474 U.S. at page 333, 106 S.Ct. 662. More narrowly the court held Daniels' claim prison officials negligently deprived him of property in violation of the due process clause of the Fourteenth Amendment did not state a claim for relief under section 1983. The court observed, however, a determination whether "merely negligent conduct may be enough to state a claim" under section 1983 "depend[s] on the right" allegedly violated, id. at p. 330, 106 S.Ct. 662, and "we need not rule out the possibility that there are ... constitutional violations that would be violated by mere lack of care...." (Id. at p. 334, 106 S.Ct. 662.) In Whitley v. Albers (1986) 475 U.S. 312, 319. 106 S.Ct. 1078, 89 L.Ed.2d 251 the court held a prisoner's claim prison officials used excessive force against him in violation of the Eighth Amendment's cruel and unusual punishment clause "must involve more than ordinary lack of due care for the prisoner's interests or safety." Finally, in Zinermon v. Burch (1990) 494 U.S. 113, 129, footnote 14, 110 S.Ct. 975, 108 L.Ed.2d 100 the court described Daniels v. Williams as "rul[ing] ... that a negligent act by a state official does not give rise to section 1983 liability."
[44] Manual of Model Civil Jury Instructions (9th Cir.2001 ed.) section 11.1, www.ce9. uscourts.gov., last visited November 30, 2006. In the federal trial the district court instructed the jury plaintiffs had the burden of proving by a preponderance of the evidence "[t]he acts or omissions of the defendants] were intentional."
[45] Brosseau v. Haugen (2004) 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583.
[46] Richardson v. Kier (1867) 34 Cal. 63, 75, 1867 WL 771.
[47] The result might be different if the jury had returned a general verdict in favor of Cooper, Devee and Luna (see Harris v. Grimes, supra, 104 Cal.App.4th at page 187, 127 Cal.Rptr.2d 791) or if the jury had been instructed in order to find the officers liable for violating Hernandez's civil rights it had to find they acted recklessly or with gross negligence (see Lucas v. County of Los Angeles, supra, 47 Cal.App.4th at page 287, 54 Cal. Rptr.2d 655).
[48] Kimber, Righteous Shooting, Unreasonable Seizure? The Relevance Of An Officer's Pre-Seizure Conduct In An Excessive Force Claim, (2004) 13 Wm. & Mary Bill Rts. J. 651, 652. (Hereafter, Righteous Shooting.)
[49] Young v. City of Killeen, Tex. (5th Cir. 1985) 775 F.2d 1349, 1353.
[50] Young v. City of Killeen, Tex., supra, 775 F.2d at page 1351.
[51] Young v. City of Killeen, Tex., supra, 775 F.2d at page 1353.
[52] Young v. City of Killeen, Tex., supra, 775 F.2d at page 1353.
[53] Young v. City of Killeen, Tex., supra, 775 F.2d at page 1353.
[54] Young v. City of Killeen, Tex., supra, 775 F.2d at page 1352.
[55] Federal courts disagree as to whether this pre-seizure conduct should be included in the "totality of the circumstances" (Graham v. Connor, supra, 490 U.S. at page 395, 109 S.Ct. 1865) used to determine whether the ultimate use of force was objectively reasonable. ("Righteous Shooting," supra, 13 Wm. & Mary Bill Rts. J. at pages 659-675.) In the Ninth Circuit an inquiry into the officers' pre-seizure conduct is limited to situations in which the "officer intentionally or recklessly provokes a violent confrontation and the provocation is an independent Fourth Amendment violation." (Billington v. Smith (9th Cir.2002) 292 F.3d 1177, 1189). Thus, it would appear that even if a plaintiff brought a section 1983 action based on pre-seizure conduct in a federal court within the Ninth Circuit a judgment for the defendants would not collaterally estop a state court negligence action based on the same pre-seizure conduct. But see City of Simi Valley v. Superior Court, supra, 111 Cal.App.4th at page 1083, 4 Cal. Rptr.3d 468.
[56] City of Simi Valley v. Superior Court, supra, 111 Cal.App.4th at page 1083, 4 Cal.Rptr.3d 468.
[57] City of Simi Valley v. Superior Court, supra, 111 Cal.App.4th at pages 1080-1081, 4 Cal. Rptr.3d 468.
[58] City of Simi Valley v. Superior Court, supra, 111 Cal.App.4th at page 1081, 4 Cal.Rptr.3d 468.
[59] City of Simi Valley v. Superior Court, supra, 111 Cal.App.4th at page 1082, 4 Cal.Rptr.3d 468.
[60] City of Simi Valley v. Superior Court, supra, 111 Cal.App.4th at page 1083, 4 Cal.Rptr.3d 468.
[61] These paragraphs solely relate to the claims defendants failed to secure, and interfered with, timely medical attention for Hernandez.
[62] Canton v. Harris (1989) 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412.
[63] Monell v. Department of Social Services (1978) 436 U.S. 658, 690-691, 98 S.Ct. 2018, 56 L.Ed.2d 611.
[64] City of Los Angeles v. Heller (1986) 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806.
[65] Government Code section 815.2, subdivisions (a), (b).
[66] Government Code section 815.2, subdivision (b).
[67] See Careau & Company v. Security Pacific Business Credit, Inc. (1990) 222 Cal.App.3d 1371, 1386, 272 Cal.Rptr. 387.
[1] Harris v. Grimes (2002) 104 Cal.App.4th 180, 187-189, 127 Cal.Rptr.2d 791, upon which the majority relies, does not support the conclusion distinct primary rights and separate causes of action exist for wrongful conduct violating an individual's constitutional right against unreasonable seizures by law enforcement officers and the common law right to be free from the negligent infliction of personal injuries when the injury allegedly resulted from the use of excess force to effect an arrest. Rather, our colleagues in Division Eight held, as we do in this case, that pursuing a state court negligence action after the federal court declined to exercise its discretionary jurisdiction over such a claim, does not constitute impermissible splitting of a single cause of action: "`A federal court's discretionary refusal to exercise pendent jurisdiction over a state claim does not bar further litigation of the state claim in state court.' [Citation.]" (Id. at p. 188, 127 Cal.Rptr.2d 791.) Indeed, implicit in the Harris court's analysis that res judicata does not apply because it was the court, not the plaintiff, that split the cause of action is the conclusion that the same primary right is involved in the negligence and civil rights lawsuits based on an allegedly wrongful police shooting. (See id. at pp. 187-188, 127 Cal.Rptr.2d 791.)