[No. B065624. Second Dist., Div. Five. Mar. 4, 1993.]

TENSOR GROUP et al., Plaintiffs and Appellants, v.
CITY OF GLENDALE, Defendant and Respondent.

### COUNSEL

Schreiber & Horn, Gregory C. Horn, Edwin C. Schreiber and Mark Schreiber for Plaintiffs and Appellants.

Freilich, Kaufman, Fox & Sohagi, Freilich, Stone, Leitner & Carlisle and Benjamin Kaufman for Defendant and Respondent.

### OPINION

**GODOY PEREZ, J.**—Plaintiffs/appellants Tensor Group, 116 W. Maple Avenue, and 1815 Orchard Avenue (collectively as Tensor) appeal from the judgment of dismissal entered upon the sustaining of the demurrer, without leave to amend, of defendant/respondent City of Glendale (the City). Tensor's complaint against the City had sought damages for injuries allegedly caused by the City's alleged inverse condemnation of its properties. The City's demurrer was sustained on the grounds that Tensor's suit was barred by the doctrine of res judicata, and, alternatively, Tensor's complaint had failed to state a cause of action because Tensor had not been denied substantial use of its properties.

For the reasons set forth below, we affirm the judgment.

### FACTUAL AND PROCEDURAL SUMMARY

*The Prior Action.*

In November 1988, Tensor filed the prior action, which combined a petition for writ of mandate and injunctive relief and a complaint for declaratory relief and damages. Therein, Tensor challenged the validity of ordinance No. 4820, enacted and made immediately effective as an emergency measure on September 27, 1988. Ordinance No. 4820 prohibited issuance of building or construction permits in multiresidential zones, except

to (a) a project complying with a City order to repair an unsafe building or substandard condition, or rebuilding as a result of destruction by fire, earthquake or other natural disaster, (b) an alteration or repair to an existing building or structure which did not result in an increase in the height, floor area, occupant load, number of dwelling units or number of bedrooms, (c) projects for which architectural and structural plans sufficient for a complete plan check were accepted and for which a plan check fee was collected on or before September 27, 1988, and to which no subsequent changes were made increasing the number of dwelling units, and for which applicable related approvals had been previously obtained, (d) one residential dwelling, multiple residential dwellings, and accessory building and structure in compliance with all provisions of the R-1750 zone, which building height did not exceed two stories, and (e) defined senior citizen housing projects.[1]

Tensor alleged that in enacting the ordinance, the City had not complied with the requirements of its charter and that Tensor had suffered damages, totalling approximately $103,997, caused by it being precluded from proceeding with projects planned for properties it owned within the City.

On February 14, 1989, the trial court entered judgment against the City, granting Tensor's petition for writ of mandate. The court found that the City's charter required a waiting period before the City could adopt the interim development regulations, and that the charter governed, not the provisions of Government Code section 65858. The court ordered the City "to cease enforcing or giving any validity to ordinance 4820 as well as any ordinance (including but not limited to Ordinance 4823) purporting to continue, extend or amend Ordinance 4820." The judgment is silent regarding Tensor's allegations of and prayer for damages.

The writ of mandate issued on March 1, 1989. The City appealed. On September 28, 1989, Division One of this appellate district affirmed the judgment, finding not only ordinance No. 4820 but all the subsequent ordinances and resolutions purporting to amend and extend the provisions of

---

[1] On October 25, 1988, the City enacted ordinance No. 4823, which amended ordinance No. 4820 to exempt a development which was limited to two stories and otherwise conformed with all R-1750 requirements, reducing the number of units to be constructed on a site by 33⅓ to 57 percent.

Subsequent to the filing of the prior action, the City enacted ordinance No. 4835, a 60-day extension of ordinance No. 4823, effective upon expiration of ordinance No. 4823. On February 7, 1989, the City enacted ordinance No. 4827, which was identical to ordinance No. 4835, except for the addition of an emergency clause, making it immediately effective. On February 21, 1989, the City adopted resolution No. 21,685 extending the moratorium an additional 90 days. On April 25, 1989, the City adopted resolution No. 21,754, extending the moratorium until August 22, 1989.

ordinance 4820[2] to be void *ab initio*. On December 13, 1989, remittitur issued.

In mid-1991, Tensor moved to amend the complaint to include relief in damages. On July 30, 1991, the court denied Tensor's motion, commenting, "It seems that . . . judgment has been granted, this decision was affirmed, it seems improper to amend the . . . petition for writ of mandate at this time." Tensor's appeal of this ruling has been dismissed by this court upon stipulation of the parties.[3]

*The Present Action.*

On September 24, 1991, Tensor filed a complaint for inverse condemnation against the City. The gravamen of this complaint was that Tensor had suffered a "partial taking" of its property (three parcels of land) for a period of approximately one year because of the existence of the City's interim development regulations (ord. Nos. 4820, 4823, 4827, 4835 and res. Nos. 21,685 and 21,754), which were held to be void *ab initio* by the Court of Appeal because of the City's failure to comply with the requirements of its charter. Tensor alleged specific damages totalling approximately $103,997; damages representing the carrying costs on the properties, including interest on loans, property taxes and insurance; damages for loss of profits; and damages representing market rate interest on the decline in value of the properties and the decline in value of Tensor's investments in the properties.

In December 1991, the City demurred. It contended that the doctrine of res judicata (merger of claims) barred the new complaint; and, as a matter of law, Tensor could not obtain relief for a temporary taking because it admitted that it was not denied all use of its property.[4]

On January 28, 1992, the court sustained the City's demurrer without leave to amend, finding that the complaint was barred by the doctrine of res

---

[2]See footnote 1, *ante.*

[3]As requested by the City, we take judicial notice of *Moratorium Litigation Committee, Tensor Group* v. *City of Glendale* (B059169, app. pending). (Evid. Code, §§ 451 and 452.)

[4]In support of this assertion, the City pointed to paragraph 11 of Tensor's complaint, which, in pertinent part, alleged, "The only exception to the VOID LAWS applicable to this lawsuit is that the VOID LAWS provided that multiple residential could be built in any of the three zones so long as they complied with all provisions of an R-1750 zone, and that the building height not . . . exceed two stories. . . ."

judicata and, alternatively, that Tensor was not deprived of all use of its property by the subject ordinances.[5]

The judgment of dismissal was entered on January 31, 1992. Notice of entry of judgment was filed and served February 5, 1992. This timely appeal followed.

## STANDARD OF REVIEW

■ "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citations.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] . . . [When a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

Moreover, "[i]f all the facts necessary to show that an action is barred by res judicata are within the complaint or subject to judicial notice, a trial court may properly sustain a general demurrer. [Citation.]" (*Frommhagen* v. *Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1299 [243 Cal.Rptr. 390].)

---

[5]In sustaining the demurrer, the court held: "There is no question that the ordinance was VOID AB INITIO. That fact was established by the Court of Appeal opinion. The question of whether the law of this state requires the initial complaint to have also mandated a request for damages seems to be one that the courts of this state have decided against plaintiff. See *California Coastal Comm.* v. *Superior Court* (1989) 210 CA.3d 1488 [258 Cal.Rptr. 567]. Thus RES JUDICATA bars this action for inverse condemnation. However even if that were not the case, another fundamental principle of law would compel this court to sustain the demurrer without leave to amend. [¶]The ordinance in question does not bar all uses of the property: It only prohibits construction exceeding three [*sic*] stories. This taking does not require compensation since governmental [*sic*] entities do not have to compensate property owners for a temporary loss of use when the taking did not prevent all use of the subject property. See *First English Evangelical Lutheran Church* v. *County of Los Angeles* (1989) 210 CA.3d 1353 [258 Cal.Rptr. 893]. Plaintiffs claim and contention that they were denied all use does not make a triable issue because that contention flies in the face of reality. What plaintiffs are really claiming is that the city prevented them from doing what they wanted to do when they wanted to do it and in effect this amounted to a total taking to the extent they were denied the desired use they wanted to make of their property. Accordingly this appears to be one of those unusual cases when the demurrer should be sustained without leave to amend even though there has been no prior opportunity to amend. . . ."

## DISCUSSION

The dispositive issue is whether Tensor's complaint for inverse condemnation is barred by the doctrine of res judicata.

■ The doctrine of res judicata ". . . precludes parties or their privies from relitigating *the same cause of action* that has been finally determined by a court of competent jurisdiction. . . ." (*Frommhagen* v. *Board of Supervisors, supra,* 197 Cal.App.3d at p. 1299, italics in original.) California law defines a cause of action "by focusing on the 'primary right' at stake: if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery. [Citations.] A cause of action is based upon the nature of a plaintiff's injury. The cause of action, as it appears in the complaint when properly pleaded, will therefore always be the *facts* from which the plaintiff's primary right and the defendant's corresponding primary duty have arisen, together with the facts which constitute the defendant's delict or act of wrong. [Citation.]" (*Eichman* v. *Fotomat Corp.* (1983) 147 Cal.App.3d 1170, 1174-1175 [197 Cal.Rptr. 612], italics in original, internal quotation marks omitted.)

". . . If the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. . . . The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable. [Citations.]" (*Sutphin* v. *Speik* (1940) 15 Cal.2d 195, 202 [99 P.2d 652].)

■ Applying these standards to the case at bench, we are compelled to concur with the court below that Tensor's complaint for inverse condemnation is barred by the doctrine of res judicata.

Tensor's prior action was pleaded as both a petition for writ of mandate and injunctive relief and as a complaint for declaratory relief and damages. The injury Tensor sought to redress by the prior action was the limitation placed on its use of its property by the City's moratorium ordinances. This injury or primary right is identical to that being propounded in Tensor's complaint for inverse condemnation.

The record reveals that Tensor's prior action alleged the same $103,997 damages which it alleged in the present action. While the present action

alleged additional and different damages, these further allegations do not defeat the res judicata claim. (See *Sutphin, supra,* 15 Cal.2d 195.) As noted, other than allegations in the prior complaint, the record is silent regarding Tensor's earlier claims for damages. This silence informs us that Tensor opted to forego pursuit of these damages in the earlier action. There is no question that, pursuant to Code of Civil Procedure section 1095, Tensor could have recovered the damages it proved to the court. Having chosen not to present this proof in the prior action, the doctrine of res judicata denies Tensor the opportunity to do so now.

Tensor insists that the fact that the present action challenges ordinances not enacted at the time of the prior action precludes the res judicata bar. This assertion is unavailing because the additional ordinances/resolutions at issue in the present action were nothing more than extensions of ordinance No. 4820, the original offending ordinance; and these extensions were expressly declared void *ab initio* by the judgment entered on February 14, 1989.

While we have determined that res judicata bars Tensor's complaint for inverse condemnation, we further note, without going into extensive discussion, the court's alternative reason for dismissing the action is supported by the record. As the ordinances in question did not preclude Tensor from "substantially all use of [its] property," no inverse condemnation based upon a regulatory taking occurred. (*Smith* v. *City and County of San Francisco* (1990) 225 Cal.App.3d 38, 45 [275 Cal.Rptr. 17].) We find readily distinguishable *Lucas* v. *So. Carolina Coastal Council* (1992) 505 U.S. __ [120 L.Ed.2d 798, 112 S.Ct. 2886], upon which Tensor relies. In *Lucas,* all agreed that the property owner had been deprived of all uses of his property, rendering it valueless, unlike the situation here.

## DISPOSITION

The judgment (order) of dismissal is affirmed.

Turner, P. J., and Grignon, J., concurred.